IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| NOREEN M. LUHR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  06-3148 |
| | ) | |
| FIDELITY MORTGAGE INC., a | ) | |
| Delaware business corporation, | ) | |
| MORTGAGE ELECTRONIC | ) | |
| REGISTRATION SYSTEMS INC, a | ) | |
| Delaware business corporation, and | ) | |
| OCWEN LOAN SERVICING LLC, | ) | |
| a Delaware limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on Defendants Ocwen Loan Servicing LLC and Mortgage Electronic Registration Systems Inc.'s Motion to Compel Arbitration and to Dismiss or, in the Alternative, to Stay Pending Arbitration (d/e 4) and Motion of Fidelity Mortgage, a Division of Delta Funding Corporation, to Compel Arbitration and to Dismiss or, in the Alternative, to Stay Pending Arbitration (d/e 8). Defendants assert that the written Arbitration Agreement, the Federal Arbitration Act (FAA), and

1

Illinois law all require arbitration of Plaintiff's claims.  See FAA, 9 U.S.C. § 1, et seq.  For the reasons set forth below, Defendants' Motions are allowed, in part.

On September 25, 2003, Plaintiff purchased the real property commonly known as 1428 South Lincoln Avenue, Springfield, Illinois.  At that time, Plaintiff obtained a mortgage loan on the property from Town and Country Banc Mortgage Services.  In April 2004, Plaintiff refinanced her mortgage loan with Town and Country Banc Mortgage Services.  In December 2004, Plaintiff refinanced her mortgage again, obtaining a mortgage loan from Fidelity in the amount of $147,000.00 to satisfy the Town and Country Banc loan.  Plaintiff avers that the Fidelity loan was closed at her home on or about the evening of December 15, 2004, by a Springfield attorney who represented the lender.  Exhibits to Plaintiff's Response to Motion to Compel Arbitration (d/e 12), p. 1-3, Affidavit of Noreen M. Luhr (Luhr Affidavit), ¶ 5.  Luhr states that the attorney was at her home for approximately 20 minutes.  Id., ¶ 9.  At the closing, the attorney had two sets of documents which appeared to Luhr to be one set of originals and one set of copies.  Id., ¶ 10.  Luhr, however, has "no way to know whether the two sets match."  Id.  According to Luhr, the attorney

"placed document after document in front of [her], and was impatient for [her] to sign each original document. He did not ask [her] to sign the copies and [she] did not sign the copies." Id., ¶ 11. Luhr further asserts that the attorney "did not attempt to explain each document and he did not allow [her] time to read each document before signing." Id. The mortgage relating to the Fidelity loan identifies Defendant MERS as Fidelity's nominee. Notice of Removal, Ex. 1, Complaint (Complaint), Ex. B, Mortgage.

In February 2006, Plaintiff sought to refinance the Fidelity mortgage with a new loan to be obtained from Bank & Trust Co. On February 22, 2006, the loan servicer, Defendant Ocwen, faxed Bank & Trust Co. a letter regarding Bank & Trust Co.'s request for a payoff balance on Luhr's mortgage. Exhibits to Plaintiff's Response to Motion to Compel Arbitration, p 6. The letter stated that, in order for the quote to be processed, the following documents must be provided: "Signed Copy of Mortgage, Signed Copy of Note, Signed Copies of all Riders, Addendums, Prepayment Penalty." Id.

Luhr asserts that on February 23, 2006, she took her set of documents from the Fidelity closing to Bank & Trust Co. Luhr Affidavit, ¶ 15. As she

3

and a Bank & Trust Co. employee were compiling the documents in order to fax them to Ocwen, they realized that none of the documents were signed. Id.; Exhibits to Plaintiff's Response to Motion to Compel Arbitration, p. 7, Affidavit of Janelle Spencer (Spencer Affidavit), ¶¶ 2-3. Ocwen's letter requested signed copies of the documents, so Luhr signed each of the documents, backdating them to December 15, 2006, in the presence of the Bank & Trust Co. employee. Luhr Affidavit, ¶¶ 14-15; Spencer Affidavit, ¶ 3.

Eventually, Luhr received a payoff balance from Ocwen. However, Luhr believed that the purported payoff balance that Ocwen provided was "inaccurate and inflated with an unenforceable and unwarranted prepayment penalty." Complaint, p. 3. As a result, Luhr filed a seven-count verified Complaint in Sangamon County (Illinois) Circuit Court. Counts 1, 2, and 3 allege quiet title claims against Fidelity, MERS, and Ocwen, respectively. Count 4 alleges a contract rescission claim against Fidelity. Count 5 alleges a tortious interference with contract claim against Ocwen. Court 6 alleges a common law tortious fraud claim against Ocwen. Count 7 alleges a violation of the Illinois Interest Act by Ocwen. Defendants MERS and Ocwen removed the matter to this Court. Plaintiff objected to

removal; however, the Court overruled this objection, holding that diversity jurisdiction existed.  Opinion, dated (d/e 17).

ANALYSIS

Defendants ask the Court to compel arbitration of Plaintiff's claims. The FAA mandates enforcement of valid, written arbitration agreements. 9 U.S.C. § 2.  "Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate."  Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005).  It is undisputed that Luhr refuses to arbitrate her claims.  Thus, the Court focuses its analysis on the first and second elements.

Turning to the first element, Defendants have provided the Court with copies of a four-page Arbitration Agreement, signed by Luhr and Fidelity Senior Vice President Sarojini Baltrus, bearing the typewritten date of December 15, 2004. Defendants Ocwen Loan Servicing LLC and Mortgage Electronic Registration Systems Inc.'s Motion to Compel Arbitration and to Dismiss or, in the Alternative, to Stay Pending Arbitration, Ex. 1, Arbitration Agreement; Motion of Fidelity Mortgage, a Division of Delta

Funding Corporation, to Compel Arbitration and to Dismiss or, in the Alternative, to Stay Pending Arbitration (d/e 4), Ex. 1, Arbitration Agreement.[1]  Plaintiff raises several challenges to the applicability of the Arbitration Agreement as a whole.  First, Plaintiff asserts that the Illinois High Risk Home Loan Act voids the Arbitration Agreement.  See 815 ILCS § 137/1 et seq.  Plaintiff further asserts that Defendants should produce the original Arbitration Agreement to the Court because circumstances raise the possibility that Luhr did not sign the Arbitration Agreement at closing.  As set forth below, Plaintiff's arguments are unpersuasive.

The express purpose of the Illinois High Risk Home Loan Act "is to protect borrowers who enter into high risk home loans from abuse that occurs in the credit marketplace . . . ."  815 ILCS § 137/5.  In applicable part, the Illinois High Risk Home Loan Act defines a "High Risk Home Loan" as "a home equity loan in which . . . (ii) the total points and fees payable by the consumer at or before closing will exceed . . . 5% of the total loan amount."  815 ILCS § 137/10.  The term "home equity loan" is defined as "any loan secured by the borrower's primary residence where the proceeds

---

[1] The Arbitration Agreement expressly extends to claims against Fidelity and "any Covered Third Party," including "any third party providing any product or service in connection with the Credit Transaction."  Arbitration Agreement, p. 1.

are not used as purchase money for the residence." Id.

Luhr asserts that the Arbitration Agreement in the instant case is void under 815 ILCS § 137/130, which provides "a mandatory arbitration provision of a high risk home loan agreement that is oppressive, unfair, unconscionable, or substantially in derogation of the rights of the borrower is void." In order for Luhr to invoke the protection of § 137/130, her Fidelity mortgage must qualify as a high risk home loan. The Fidelity mortgage was secured by Luhr's primary residence, and it is clear from the record that the proceeds of the Fidelity loan were not used as purchase money for Luhr's residence. However, as set forth below, the total points and fees paid by Luhr at or before the closing did not exceed 5% of the total loan amount.

The parties agree that, in order to fall within the scope of the Illinois High Risk Home Loan Act, the total points and fees paid by Luhr must exceed $7,350.00, which is 5% of the total loan amount of $147,000.00. Luhr asserts that her "settlement charges" totaled $7,374.41. Plaintiff's Response to Motions to Compel Arbitration, p. 2. She has provided the Court with a copy of the HUD-1 Settlement Statement from the December 2004, transaction to support her argument. Exhibits to Plaintiff's Response

7

to Motion to Compel Arbitration, p. 4-5, Settlement Statement. As Defendants correctly note, Plaintiff's calculation of settlement charges includes $291.91 in pre-paid interest for the period from 12/20/04 to 1/1/05, which is included on line 901 of the Settlement Statement.[2] The applicable portion of the statutory definition of a high risk home loan requires that the total "points and fees" paid by the borrower at or before the closing exceed 5% of the total loan amount. The Illinois High Risk Home Loan Act defines "points and fees" as "all items required to be disclosed as points and fees under 12 CFR 226.32 (2000, no subsequent amendments or editions included)." 815 ILCS § 137/10. The definition of "points and fees" set out in 12 C.F.R. § 226.32(b)(1) excludes interest. 12 C.F.R. § 226.32(b)(1)(i). Therefore, the settlement charges totaling $7,374.41 must be reduced by $291.91 in pre-paid interest set out on line 901. Thus, the total points and fees evidenced by the HUD-1 is $7,082.50, which is less than 5% of the total loan amount. Section 130 of the Illinois High Risk Home Loan Act does not apply. Because the loan at issue falls

---

[2]The instructions for completing the HUD-1 statement directs that "Line 901 is used if interest is collected at settlement for a part of a month or other period between settlement and the date from which interest will be collected with the first regular monthly payment. Enter that amount here and include the per diem charges." 24 C.F.R. Pt. 3500, App. A.

outside the scope of the Illinois High Risk Home Loan Act, the Court need not address Defendants' arguments relating to federal preemption.

Plaintiff next asserts that Defendants should produce the original Arbitration Agreement to the Court because circumstances raise the possibility that Luhr did not sign the Arbitration Agreement at closing. Defendants have produced a facially valid Arbitration Agreement. Luhr, as the party opposing arbitration, "must identify a triable issue of fact concerning the existence of the agreement in order to obtain a trial on the merits of the contract." Tinder v. Pinkerton Security, 305 F.3d 728, 735 (7th Cir. 2002). The standard is analogous to that required of a party opposing summary judgment under Federal Rules of Civil Procedure 56(e): the party opposing arbitration "must demonstrate that a genuine issue of material fact warranting a trial exists." Id. As in the summary judgment context, Luhr's evidence "'is to be believed and all justifiable inference are to be drawn in [her] favor.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). Luhr's argument fails, however, even under this generous standard.

The only evidence presented by Luhr relating to the signing of the Arbitration Agreement is that she had "no way to know exactly what [she]

9

signed at the closing, or whether [she] actually signed every document for which the closing agent gave [her] a copy." Luhr Affidavit, ¶ 12. This evidence is insufficient to create a genuine issue of fact as to whether Luhr signed the Arbitration Agreement at closing. Luhr further asserts that the rushed circumstances of the December 2004 closing, "at the very least," pose a possibility that she "did not understand or appreciate what she may have signed." Plaintiff's Response to Motions to Compel Arbitration, p. 7. An agreement to arbitrate must be enforced "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. As the Seventh Circuit has recognized, "[a] contract need not be read to be effective; people who accept take the risk that the unread terms may in retrospect prove unwelcome." Hill v. Gateway 2000, Inc., 105 F.3d 1147, 1148 (7th Cir. 1997). Luhr fails to identify a triable issue of fact concerning the existence of an agreement. The Court need not proceed further on this issue.

In connection with her Illinois High Risk Home Loan Act argument, Luhr asserts that the Arbitration Agreement is excessive and a contract of adhesion. To the extent that Luhr seeks to raise these issues independent of the Illinois High Risk Home Loan Act, they do not defeat Defendant's

Motions to Compel. This Court's inquiry is limited to issues relating to the making and performance of the agreement to arbitrate. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967). Luhr's assertion that the Arbitration Agreement is, in fact, excessive is unpersuasive. Defendants are not attempting to enforce the Arbitration Agreement after the loan has been repaid or at a time distant from the original transaction. Additionally, Luhr's adhesion argument pertains to the entire agreement between herself and Fidelity and not to the Arbitration Agreement specifically. Under the FAA, arguments relating to the contract as a whole are appropriately resolved by the arbitrator. Id.

The Court turns next to an analysis of whether Luhr's claims fall within the scope of the Arbitration Agreement. The Arbitration Agreement provides that upon written notice demanding arbitration, "any Claim shall be resolved by binding arbitration." Arbitration Agreement, p. 2. The Arbitration Agreement defines "Claim" as follows:

> [A]ny claim, dispute or controversy between you and us (except for any Excluded Claims, as defined below) arising from or relating to the Credit Transaction or the relationships resulting from the Credit Transaction, including the validity, enforceability or scope of this Agreement or the Credit Transaction. "Claim" includes claims of every kind and nature between you and us, including but not limited to initial claims,

counterclaims, cross-claims and third-party claims and claims based upon contract, tort, fraud, and other intentional torts, constitution , statute, regulation, common law and equity. The term "Claim" is to be given the broadest possible meaning. . . . A dispute between you and us will be deemed to be a "Claim" and be covered by this Agreement if it relates to . . . any dispute about soliciting, originating, making, closing, servicing, collecting or enforcing the Credit Transaction; the notes, mortgages, deeds of trust, deeds to secure debt, security agreements, applications, disclosures and/or other documents related to or evidencing the Credit Transaction . . . .

Id., p. 1.  Clearly, Counts 4 through 7 fall within the scope of the Arbitration Agreement, a fact which Luhr concedes. Plaintiff's Response to Motions to Compel Arbitration, p. 6. Therefore, these claims must be submitted to arbitration.

Luhr styles Counts 1, 2, and 3 as quiet title actions against each of the Defendants individually. As Defendants concede, the Arbitration Agreement expressly excludes claims to quiet title.[3] "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648 (1986) (internal quotations and citations omitted). Defendants assert that Luhr

---

[3]The Arbitration Agreement defines "Excluded Claims" as including "(e) any action to quiet title." Arbitration Agreement, p. 1.

12

must nevertheless submit the claims in Counts 1, 2, and 3 to arbitration because they are not actually quiet title actions and any dispute as to their arbitrability must be decided by an arbitrator. The question whether a dispute is arbitrable is generally one for the Court to decide. <u>Id</u>. at 649. However, "the parties to a contract can if they wish assign the determination of the arbitrability of a dispute to an arbitrator," in which case the question of whether they have done so is a matter for the Court. <u>Air Line Pilots Ass'n, Intern. v. Midwest Exp. Airlines, Inc.</u>, 279 F.3d 553, 555 (7th Cir. 2002).

In the instant case, the applicability of the Arbitration Agreement to Counts 1, 2, and 3 turns on interpretation of the Agreement and a determination as to its scope. The Arbitration Agreement expressly provides for the arbitration of claims relating to the validity, enforceability or scope of the Agreement. This provision provides clear and unmistakable evidence that the parties agreed to arbitrate matters relating to the scope of the Arbitration Agreement. <u>See</u> <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938, 944 (1995). Therefore, the arbitrability of Counts 1, 2, and 3 is a question for the arbitrator. Defendants' requests to compel arbitration of Luhr's claims are allowed.

The final question for the Court's consideration is whether to dismiss Luhr's Complaint or to stay the proceeding in accordance with 9 U.S.C. § 3. Defendants cite several non-controlling cases in which courts have dismissed, rather than stayed, actions in which all of the claims were subject to arbitration. Under the circumstances of the instant case, the Court is convinced that a stay, rather than the dismissal of Luhr's claims, is appropriate.

THEREFORE, Defendants Ocwen Loan Servicing LLC and Mortgage Electronic Registration Systems Inc.'s Motion to Compel Arbitration and to Dismiss or, in the Alternative, to Stay Pending Arbitration (d/e 4) and Motion of Fidelity Mortgage, a Division of Delta Funding Corporation, to Compel Arbitration and to Dismiss or, in the Alternative, to Stay Pending Arbitration (d/e 8) are ALLOWED, in part. Defendants' requests for dismissal of Luhr's claims are denied. The Motions are allowed in all other respects. Counts 4 through 7 of the Complaint are subject to arbitration, as is the question of the arbitrability of Counts 1, 2, and 3. This case is stayed pending arbitration. The parties are directed to file a status report on or before May 11, 2007.

IT IS THEREFORE SO ORDERED.

ENTER:  November 14, 2006.

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE
